# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF OMEGA PROTEIN INC. AS OWNER OF F/V GULF SHORES FOR EXONERATION FROM OR LIMITATION OF LIABILITY | : | DOCKET NO. 2:04-cv-2071<br>Section P |
| | : | JUDGE MINALDI |
| | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Currently before the court is a "Motion to Compel" [doc. 37] filed by Samson Contour Energy E & P L L C ("Samson"). By this motion, Samson seeks to have the court compel Omega Protein, Inc. ("Omega") to produce witness statements taken on or shortly after October 4, 2004, the date of the allision which forms the basis of this civil action.[1] Omega claims that these witness statements are not subject to discovery because they were taken by agents and attorneys of Omega in anticipation of litigation and are therefore protected from discovery by the attorney-client privilege

---

[1] Samson's First Set of Requests for Production included the following:
 Request for Production No. 1
  Please provide any and all statements or reports obtained and/or prepared in connection with any interview conducted by Omega or on Omega's behalf concerning circumstances of the allision referred to in the Limitation of Liability.

Omega's response to this Request for Production was as follows:
  **OBJECTION**. Any statements or reports obtained and/or prepared in connection with any interview conducted by or on behalf of Omega were taken and/or prepared in anticipation of litigation and are further protected under the attorney-client privilege. In further objection and response, a Privilege Log is being prepared referable to the requested statements and will be provided in a supplement hereto.

and work-product doctrine. Samson counters that Omega has waived any privilege which may have been attached to these statements because of its failure to respond to discovery in a timely manner. Additionally, Samson asserts that "good cause" exists for the production of the crewmember's statements.

The issues before the court are whether Omega has waived the asserted privileges by failing to respond in a timely manner, and if not, whether the asserted privileges are valid.

I.      **Waiver by Untimeliness**

Samson argues that any objections Omega may have to the Request for Production have been waived by its failure to file timely objections and by its failure to timely comply with the court's July 7, 2006 order wherein Samson's first Motion to Compel was granted, and Omega was ordered to respond to all outstanding discovery and/or provide a privilege log for any responsive information withheld within 10 calendar days of the order. [doc. 28]. Omega apparently provided discovery responses on July 14, 2006 but did not provide Samson with a Privilege Log until August 28, 2006. Samson claims that this delay results in a waiver of Omega's claimed privileges.

"District courts have considerable discretion in managing discovery." *Munoz v. Orr*, 200 F.3d 291, 305 (5th Cir. 2000), citing *Geiserman v. MacDonald*, 893 F.2d 787, 789 (5th Cir. 1990). Courts considering similar arguments have noted that imposing the sanction of waiver of a privilege for the failure of a party to timely produce a privilege log is a "draconian remedy" and must be warranted under the specific facts of the case. *See Stevens v. Omega Protein, Inc.,* 2002 WL 1022507 (E.D. La. 2002); *Woodland v. Nalco Chemical Co.,* 2003 WL 22928808 (E.D. La. 2003); *Greer v. Lowes Home Centers, Inc.*, 2006 WL 220823, *2 (W.D. La. 2006). The facts of this case reveal that Omega complied with the court's July 7, 2006 order by providing discovery responses to Samson on July

2

14, 2006 and that in those responses, Omega indicated that a privilege log would be forthcoming. Although Omega offers no explanation for its delay in producing the privilege log, Samson has failed to demonstrate that it suffered prejudice as a result of this delay. *See Greer, supra.* Under the facts of this case, the court does not find that Omega's delay resulted in a waiver of its asserted privileges.

## II. Attorney-Client Privilege and Work-Product Doctrine

Shortly after the allision on October 4, 2004, a total of 19 witness statements were taken of Omega employees who were crewmembers of the F/V GULF SHORE at the time of the allision. Omega claims that 14 of these statements were taken by Joseph Sarkies of Livaudais Claims Service, at the request of counsel for Omega, and that 5 were taken by Michael Lemoine, former counsel for Omega, in anticipation of litigation and in furtherance of the defense of Omega. Omega claims that all of these witness statements fall within the protection of the work-product doctrine and that the statements taken by Mr. Lemoine are also insulated from discovery by the attorney-client privilege.

The attorney-client privilege generally protects confidential communications made by a client to his lawyer for the purpose of obtaining legal advice. *Conoco, Inc. v. Boh Bros. Construction, Co.*, 191 F.R.D. 107, 115 (W.D. La), citing *Guzzino v. Felterman*, 174 F.R.D. 59, 60-61 (W.D. La. 1997); *Hodges, Grant, & Kaufman v. United States*, 768 F.2d 719, 720 (5th Cir. 1985); *Shields v. Sturm, Ruger, & Company*, 864 F.2d 379, 382 (5th Cir. 1989). The attorney-client privilege can extend to communications between corporate employees and counsel if the communication is made at the direction of corporate superiors in order to secure legal advice and the employees are aware that they are being questioned so that the corporation can obtain legal advice. *Upjohn Co. v. United States,* 101 S.Ct. 677, 685 (1981); *In re Bank of Louisiana/Kenwin Shops Inc.,* 1998 WL 788776 (E.D. La.

1998). "The work-product doctrine is a judicially created immunity to prevent a party to a lawsuit from receiving the benefits of an opposing counsel's preparation for trial." This doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Boh Bros.,* 191 F.R.D. at 117-18; *Dunn v. State Farm*, 927 F.2d 869, 875 (5th Cir. 1991). The work-product doctrine protects from discovery documents and other tangible things prepared by a party or representative of a party, including attorneys, consultants, agents, or investigators in anticipation of litigation. *Boh Bros.,* 191 F.R.D. at 118; *Hickman v. Taylor,* 67 S.Ct. 385, 393-94 (1947). The burden of establishing the either discovery privilege rests with the party who invokes it. *Boh Bros.,* 191 F.R.D. at 115; *Guzzino,* 174 F.R.D. at 60-61; *Hodges, Grant, & Kaufman,* 768 F.2d at 720.

In this case, Omega has not established that the statements given to corporate counsel by corporate employees were confidential communications made for the purpose of obtaining legal advice. Accordingly, the court finds that Omega has failed to establish the existence of the attorney-client privilege with respect to the 5 statements taken by Mr. Lemoine.

However, there appears to be little dispute by the parties that the statements at issue were taken in anticipation of litigation and are protected by the work-product doctrine codified in Rule 26(b)(3). This does not end the inquiry, though, as the protection offered by the work-product doctrine is not absolute. Samson may still be entitled to production of these documents if it can establish that it "has a substantial need for the materials in preparation of [its] case and that [it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P 26(b)(3).[2]

---

[2] In arguing that it is entitled to the documents at issue, Samson relies on *Southern Railway Co. V. Lanham*, 403 F.2d 119 (5th Cir. 1969) and argues that there is "good cause" for production of these documents. However, the court notes that the "good cause" standard used in *Southern Railway Co.* was abolished by the 1970 amendments to Rule 26 and replaced by the "substantial need" standard set forth therein. *American River Transportation Co. V. M/V*

In support of its need for the documents, Samson states that the contemporaneous nature of the statements given by the crewmembers involved in the allision on October 4, 2004 make the information contained therein essential to its trial preparation. Additionally, Samson points out that although it has been able to depose Captain Stewart, Captain Stewart admitted in his deposition that his memory of the event was not as good as it would have been two years ago. *See* Samson's Exhibit D. Moreover, Samson asserts that despite its investigative efforts, it has been unable to locate certain witnesses, including the chief engineer who was on watch at the time of the allision.

In response to Samson's arguments, Omega states that "equivalent evidence may be obtained by taking depositions of the persons whose statements were taken." Doc. 41, p.3.

In determining whether Samson has shown a substantial need for the witness statements, the court must consider the reasons advanced by Samson in light of Rule 26's policy that one side should not automatically benefit from the preparatory work of the other side. *Hamilton v. Canal Barge Co.,* 395 F.Supp. 975, 977 (D.C. La. 1974). The mere passage of time does not necessarily require the production of witness statements taken after an accident. However, the passage of time is more relevant when the statements at issue were taken within hours of the accident since they are likely to contain information that no deposition could bring out. *Id.*; *American River Transportation,*, 2005 WL 144777, *2 (E.D. La. 2005). Further, when a witness to an accident gives a contemporaneous account in a written statement and is later either unavailable to be deposed or provides deposition testimony that is not the substantial equivalent of his statement, such factors weigh in favor of production.

As to Captain Stewart, the court finds that Samson has demonstrated that due to the passage

---

*Bow Lion*, 2005 WL 144777 (E.D. La. 2005).

5

of time, Captain Stewart's deposition is not the substantial equivalent of the contemporaneous statement given by him. *Hamilton*, 395 F.Supp. at 978; *American River Transportation*, 2005 WL 144777, *2. Specifically Samson has pointed out deposition testimony from Captain Stewart which establishes that Captain Stewart did not have complete recollection of the events surrounding the allision.[3]

With respect to the other crewmembers of the F/V GULF SHORE, Samson asserts that it has been unable to locate them for deposition. In support of this assertion, Samson has provided an affidavit from Jamie Henry, its attorney of record, which outlines the investigative efforts which have been undertaken to locate these crewmembers. Three separate investigators have been hired to locate the crewmembers. The first investigator, A&B Inspection Services, Inc. was unable to locate any of the crewmembers. The second investigator, Aucoin Claims Services, was able to locate Captain Stewart, and Samson was able to depose him. The third investigator, TMI Investigations, Inc. was able to locate Corey Shaner, Ernest Rush, and Arthur Roane. However, no meaningful information about the accident at issue in this case was obtained from these individuals, and Samson was unsuccessful in contacting them again. *See* Doc. 64-4, Exhibit 3, ¶¶ 4-8. Not including attorney fees, Samson has spent over $4,800 on its investigative efforts to locate the F/V GULF SHORE

---

[3] In support of its position, Samson pointed out the following exchange that took place during Captain Stewart's deposition:

| | |
|---|---|
| Q. | How would you describe the weather on that day as they give you here on this form? |
| A. | Clear. |
| Q. | So you did not think it was hazy? |
| A. | No. |
| Q. | Did you ever tell anybody it was hazy? |
| A. | I couldn't tell you. That's two years ago. |
| Q. | You've testified that the platform that – |
| A. | That could have been why they checked "hazy" off on this. Maybe I did say it was hazy. |
| Q. | So in this instance, your memory would have been better two years ago than it is today? |
| A. | Yeah, I guess. A lot happened at that one point. |

crewmembers. The court finds that Samson has made reasonable efforts to locate the crewmembers of the F/V GULF SHORE but has been unable to do so. The unavailability of these key witnesses prevents Samson from being able to obtain the substantial equivalent of the witness statements through other means such as a deposition.

For these reasons, it is

ORDERED that the motion to compel be GRANTED and that Omega produce the 19 witness statements at issue.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, January 17, 2007.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE